#### IN THE

# SUPREME COURT

#### OF THE ·

## STATE OF NEW-YORK,

#### IN MAY TERM, 1845.

---

### DE BOW *vs.* THE PEOPLE.

Associations formed pursuant to the act entitled " An act to authorize the business of banking," passed April 18, 1838, supposing the act constitutionally passed, are corporations.

The provision in the constitution of this state declaring the assent of two-thirds of all the members elected to each branch of the legislature to be' requisite to every bill creating any body politic· or corporate, is not limited to corporations of any particular character, but extends to all corporations.

The question whether a particular act, falling within this provision, received the assent of the required number of members, is to be determined whenever it arises by the court, who for that purpose are to examine the original law on file in the office of the secretary of state.

The general· banking law, not having received the assent of two-thirds of the members of either branch of the legislature, is, so far as it professes to authorize the formation of associations to carry on the business of banking, utterly void, and the banking companies which have been organized under it have no legal existence.

Where a defendant was indicted for passing and having in his possession, with intent to pass, forged and counterfeited bank notes with intent to pass and *with intent to defraud the Bank of Warsaw*, which was an association formed according to the provisions of the general banking law, and the objection that no

such corporation or artificial person existed, was taken on the trial and over-ruled, it was held on error, the fact appearing by a bill of exceptions, that the conviction was erroneous; and the judgment was reversed.

ERROR to the Ontario general sessions. De Bow was indicted in the court below for passing, and for having in his possession with intent to pass, certain forged and counterfeited bank notes. In some of the counts, the charge was, that he intended to defraud the Bank of Warsaw. The defendant pleaded not guilty. On the trial, the district attorney gave evidence of the defendant's acts; and also gave in evidence certain articles of association entered into by several individuals on the 28th December, 1838, in pursuance of the "act to authorize the business of banking," by which the associates proposed to establish a bank in the county of Genesee by the name of the Bank of Warsaw. The association never went into operation or issued any bills. The defendant insisted that the act under which the association was formed was unconstitutional and void, because it was not passed by a vote of two-thirds of the members of the legislature; and that the Bank of Warsaw was not a body capable in law of being defrauded. The court decided that the association was capable in law of being defrauded, and admitted the articles in evidence. The defendant's counsel requested the court to charge the jury, that the defendant could not be convicted of having counterfeit money in his possession with intent to pass the same with intent to defraud the Bank of Warsaw; and to charge that there was no body existing in law by the name of the Bank of Warsaw capable of being defrauded. The court refused so to charge. The defendant excepted to the several decisions of the court, and the jury found him guilty. The court sentenced the defendant to five years imprisonment in the state prison; and a record of the judgment having been filed, the defendant now brings error.

*A. Worden*, for the prisoner.

*T. M. Howell*, district attorney, for the people.

De Bow v. The People.

*By the Court,* BRONSON, Ch. J. It is a part of the crime charged upon the defendant, and of which he has been convicted, that he intended to defraud the Bank of Warsaw. That was an association formed under the general banking law of 1838; and if the law was not a constitutional exercise of power on the part of the legislature, it follows that there was no such legal being as the Bank of Warsaw to be defrauded, and the defendant has been improperly convicted. The objection was taken on the trial that the law did not receive the assent of two-thirds of the members of the legislature, and was consequently void. The question of validity is directly and necessarily presented, and we cannot, if we would, turn aside from considering it. As we have thus cast upon us the most delicate and important duty which we are ever called upon to discharge, and as consequences of unusual magnitude may hang on our decision, I do not regret to find that the question before us has already been virtually settled; and that, too, by the court of last resort. I do not mean that the precise point in relation to the validity of this law has been decided; but I do mean that every step in the argument on which the question turns has been directly and necessarily adjudged by the court for the correction of errors.

By the fundamental law the people have declared, that " the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill" "creating, continuing, altering, or renewing any body politic or corporate." (*Art.* 7, § 9.) And no bill can be deemed to have been passed in that manner, unless so certified by the presiding officer of each house. (1 *R. S.* 156, § 3.) Knowing, as we do from an inspection of the original engrossed bill on file in the secretary's office, that the general bank law was not passed as a two-thirds bill, it would seem not to be necessary to go beyond the inquiry, whether associations formed under the law are bodies politic or corporate; for if they are, the law was not passed in such a manner as to give it validity. But beyond the question of corporation or not, two other points have been discussed in the courts: first, whether the constitution extends to all corpora

tions; and second, in what way should the question be tried whether the law received the requisite number of votes. Should it be matter of averment, to be tried by a jury; or is it the business and duty of the court to ascertain and declare whether any supposed law was duly enacted? I shall not go into a general discussion of these questions, for the reason that I have done so on former occasions, and because I deem the questions now settled.

It was never doubted that the two-thirds clause of the constitution extended alike to all corporations, until it was said in *The People* v. *Morris*, (13 *Wend.* 325,) that it did not extend to *public* corporations, such as cities and villages. When the license had once been taken of holding that the constitution did not mean so much as it said, it was not very difficult to make another, and a still wider departure; and accordingly we find that in *Warner* v. *Beers*, (23 *Wend.* 103,) two members of the court of errors advanced the opinion, that the constitution did not reach *private* corporations, such as banks, provided they were created under general laws which authorized every body to make corporations. They said, the general banking law created no monopoly, and gave no exclusive privileges. That is equally true of every other bank charter. The legislature of this state has never yet granted to a banking company any privilege which might not the next day be granted to a dozen other companies, to be exercised in the same place. It is not the charter, whether general or special, which makes the monopoly; but it is the restraining law, which ties up the business of banking, and makes it a franchise to be dealt out by the government. A corporation formed under the general banking law has all its privileges just as exclusively, and enjoys just as large a monopoly, as a safety fund bank created by special charter. The restraining law, which makes the monopoly, may undoubtedly be repealed by a majority vote; and I hope the day is not very distant when this, and other kindred laws, which needlessly shackle men in their lawful pursuits, will either be greatly modified, or wholly erased from the statute book. I am as firm a believer in the sentiment that the people

are governed too much, as I am in the doctrine that where the constitution speaks in unequivocal terms, and tends to no great evil or absurdity, it should be followed at all events—leaving the work of making amendments to the people, to whom alone it rightfully belongs.

The two learned jurists to whom I have alluded founded their reasoning on the case of *The People* v. *Morris.* Assuming it to be there settled that public corporations are not within the influence of the constitution, they proceeded another step, and held that another, and a more important class of corporations were also free from that influence. Thus it is, and ever will be, that the first departure from the plain and explicit language of the fundamental law is a most dangerous step; for it will serve as a sufficient precedent for making a still wider breach whenever the occasion for it is presented. In the first place, all public corporations are taken out of the influence of the constitution, because no great danger need be apprehended from the increase of such corporations. Then, private corporations follow, provided they are made by the hundred, instead of doing it more sparingly. And then the constitution, instead of requiring, as it now does, the assent of two-thirds of the members to *every* bill creating *any* body politic or corporate, must have a new reading, as follows : bills creating public corporations may be passed by a majority vote; and bills creating private corporations may be passed in the same way, provided there is no monopoly: but if you wish to create a single private corporation, which is a monopoly, then the assent of two-thirds of the members shall be required. Or, the amended reading may be more briefly expressed in these words: the assent of two-thirds of the members shall be requisite to every bill creating any *private* corporation, *which, when created, will be a monopoly.* There is enough in either mode of stating the matter to startle any man who believes, as I do, that the safety of free institutions depends on a strict adherence to the fundamental law, whatever we may think of the wisdom or expediency of its provisions.

I have shown on a former occasion that what was said on

this subject in *The People* v. *Morris* was but a *dictum*, in no way essential to the decision of the cause; and have assigned my reasons for holding that the two-thirds clause of the constitution extends to all corporations, whether public or private. (*The People* v. *Purdy*, 2 *Hill*, 31.) And it is enough upon this branch of the case to add, that my opinion was fully confirmed by the court for the correction of errors in *Purdy* v. *The People*, (4 *Hill*, 384,) which is a decision directly on the point. When the case of *The People* v. *Morris* was thus completely overthrown, all the arguments which had been built upon it in *Warner* v. *Beers* necessarily fell with it. The fundamental law has been restored to its original reading. It now speaks as it was written, and declares in terms too plain to be mistaken, that the assent of two-thirds of the members shall be requisite to every bill creating *any* corporation.

The second question which remained for some time unsettled was, how shall it be ascertained whether bills falling within the two-thirds clause of the constitution were passed by the requisite number of votes. (*See Thomas* v. *Dakin*, 22 *Wend.* 9; *Warner* v. *Beers*, 23 *id.* 103; *The People* v. *Purdy*, 2 *Hill*, 31.) But that doubt has been resolved by the court for the correction of errors, and it is now settled, that it is the business of the court to determine what is statute, as well as common law; and for that purpose the judges may and should, if necessary, look beyond the printed statute book, and examine the original engrossed bills on file in the office of the secretary of state; and it seems that the journals kept by the two houses may also be consulted. (*Purdy* v. *The People*, 4 *Hill*, 384.) I do not refer to the mere *dicta* of those who delivered opinions. The point was directly and necessarily involved in the decision which was made. The court did look beyond the printed statute book, and, on finding that a law altering the charter of the city of New-York was not certified as having passed by a two-thirds vote, it was deemed not to have been so passed, and was for that reason adjudged null and void.

If the two-thirds clause of the constitution extends alike to all corporations, and if it is the business of the court to inquire

De Bow *v.* The People.

and determine whether laws falling within the clause received the requisite number of votes, then, knowing as we do that the general banking law was not passed as a two-thirds bill, nothing remains of this case but the inquiry, whether these banking associations are bodies politic or corporate. It has never been doubted by this court, or by any member of it, either before or since the decision in *Warner* v. *Beers*, that they are corporations; and that they are as completely so as any other body politic which was ever brought into existence. (*Thomas* v. *Dakin*, 22 *Wend.* 9; *Delafield* v. *Kinney*, 24 *id.* 345; *The People* v. *The Assessors of Watertown*, 1 *Hill*, 616; *Willoughby* v. *Comstock*, 3 *id.* 389; *The People* v. *The Supervisors of Niagara,* 4 *id.* 20; *Matter of the Bank of Dansville*, 6 *id.* 370.) And although some attempts have been made to controvert this doctrine, no judicial officer, whether lawyer or layman, has ever yet ventured upon the unqualified assertion that these companies are not corporations. Some have first reasoned themselves into the belief that the convention did not mean—as its language plainly imports—to reach all corporations; and have then concluded that these general-law banks are not corporations *within the spirit, intent and meaning of the constitution.* These, or some other qualifying words have constantly been employed by those who wish to take this class of banks out of the influence of the fundamental law. In *The People* v. *The Assessors of Watertown*, (1 *Hill*, 616,) I attempted to bring this question to the very plain and simple test of comparing one of the general-law banks with one of the safety fund banks having a special charter; and I hazard little in saying, that any intelligent and right-minded man who will make the comparison for himself will come to the conclusion, that so far as relates to the essential attributes of a corporation, there is not a shadow of difference between the two. If one is not a corporation, the other is not; indeed, we have no corporations. But I will not again enter into the discussion of the question. It is enough that it has been expressly decided by the court of last resort that the general-law banks are corporations, and as such are subject to taxation on their capital like

other monied corporations. (*The Supervisors of Niagara* v. *The People, December,* 1844; *Albany Exchange Bank* v. *Boardman, December,* 1844.) I have not seen the opinions which were delivered in the court of errors; but I know that in the first case, if not in the last, the point must have been directly and necessarily adjudged, that the general-law banks are corporations.

It is said that the court of errors only decided that these banks are corporations *within the meaning of the tax law,* and not that they are such within the meaning of the constitution. There is nothing in this argument. The court decided that these banks are corporations of the particular kind or species mentioned in the tax law; to wit, "monied or stock corporations deriving an income or profit from their capital, or otherwise." (1 *R. S.* 414, § 1.) That necessarily affirmed that they were corporations; and the constitution is not confined to any particular kind or species of corporations; but includes the whole genus. The words are, "any body politic or corporate." No judge could ever respect himself after holding that these banks are corporations within the meaning of the tax law, and yet that they are not corporations within the meaning of the constitution.

It is also said, that the court of errors decided in *Warner* v. *Beers,* (23 *Wend.* 103,) that these banks are not corporations within the spirit and meaning of the constitution. That case was not argued in this court; but judgment passed as a matter of course on the authority of *Thomas* v. *Dakin,* (22 *Wend.* 9,) which presented the same questions. It was there held, 1. That these banks are corporations, and that a two-thirds vote was essential to the validity of the law under which they had their existence; 2. That the legislature might by general laws provide for the creation of an indefinite number of corporations; and 3. That it was to be presumed on the record before us that the general banking law had been passed by a two-thirds vote. On these grounds, judgment was rendered for the plaintiff; and that judgment was affirmed by the court of errors. It is impossible to maintain that this judgment of affirmance could

amount to a decision against the corporate capacity of the banks. It comes much nearer affirming, what this court had decided, that the banks were corporations. It is true that two or three members of the court of review gave different reasons for the conclusion at which they arrived, from these which had conducted this court to the same result. But who can say what reasons operated upon the nineteen or twenty other members of the court of errors who voted to affirm our judgment? For aught that appears, they thought as we did, that these banks were corporations; but that the question whether the law had passed by a two-thirds vote did not arise.

I am well aware that a resolution was passed more than two weeks after the case had been decided, declaring that these banks "are not bodies politic or corporate *within the spirit and meaning* of the constitution." This proceeding was noticed in *The People* v. *The Assessors of Watertown,* (1 *Hill,* 616.) And for the present occasion I think it enough to say, that neither the court for the correction of errors, nor any other court, can settle a point of law by passing a resolution, when there is no case before it for adjudication. The case was decided by affirming our judgment on the seventh of April; and it was not until fifteen days afterwards, on the twenty-second of April, that the resolution was adopted. It was brought forward for the very reason that the case itself decided nothing to the purpose. The resolution was an extra-judicial proceeding, and is entitled to no higher consideration than though it had been passed by the same individuals in any other place, instead of the senate chamber. It is entitled to some weight as expressing the views of several gentlemen of great respectability on a question of public importance; but I protest against its being brought forward as a judicial decision, to govern as a precedent in other cases.

But suppose the resolution is to stand as the judgment of the court. Then, taken in connection with the opinions which were delivered, the court evidently conceded that these banks are corporations; but on the authority of *The People* v. *Mar-*

*ris,* denied that they came within "*the spirit and meaning* of the constitution." Now, the whole of this legal heresy was, as I humbly conceive, directly overruled in *Purdy* v. *The People,* (4 *Hill,* 384.) There was much greater difficulty in saying that these monied corporations were not within the constitution, than there was in holding that public corporations were not within it. And since the court of last resort has decided—not by an extra-judicial resolution, but by an adjudication precisely on the point—that public, as well as private corporations are within the constitution, it is in vain to talk any longer about the authority of *Warner* v. *Beers* on this question. If that case decided at the first any such thing as is claimed for it, the precedent has since been plainly overruled by the same court which made it. And I repeat, the constitution is now restored to its original reading.

One word more upon this case of *Warner* v. *Beers.* If it decides that these banks are not corporations, it was directly overruled by the judgment of the same court in *The Supervisors of Niagara* v. *The People.* If it decides that the court can disregard the explicit language, and go upon what it chooses to consider "the intent and meaning" of the constitution, and thus save some corporations from the influence of the two-thirds clause, then it was directly overruled by the judgment of the same court in *Purdy* v. *The People.*

We are then brought to the following results, all founded— not upon mere *dicta*—but upon the express adjudications of the court for the correction of errors. 1. It is the business and duty of the court to examine and decide, whether any law falling within the two-thirds clause of the constitution received the requisite number of votes to give it validity. If it did not, the supposed law is utterly void. 2. Associations formed under the general banking law are corporations. And 3. The constitution extends to all corporations. The conclusion is obvious. Having examined and ascertained that the general banking law did not have the assent of two-thirds of the members of either house, it follows, that so far as it authorized the forming of cor porations or associations, it is utterly void; and the banking

companies which have been organized under it have no legal existence.

The counsel for the people spoke with great earnestness of the consequences which must result from holding this law unconstitutional. It is easy to see that results of vast moment hang on our decision; and did I entertain a single doubt, I would pause and reflect still further. But I have never for a moment supposed that the law and the constitution could both stand together. If others can reconcile them, I shall not regret it. But if they find it necessary to trifle with the constitution in order to uphold the law, I cannot be a co-laborer in such a work, whatever consequences may follow. We are of opinion that the law cannot be supported, and consequently that the defendant was improperly convicted.

Judgment reversed.