THE PEOPLE *vs.* JOHN H. CHADWICK.

Where, in an indictment for forgery, under 2 *R. S.* 761, *§ 36,* the intent charged is, to defraud the bank by which the counterfeit bills purported to have been issued, it is competent for the public-prosecutor, on the trial, to prove by parol evidence, the existence of the bank and the fact of its issuing bills without producing an authenticated copy of its charter. The rule of evidence is the same, whether the intent charged be to defraud the bank or to defraud a third person.

The prisoner was indicted and convicted at the April term of the Court of Oyer and Terminer, in Chemung county, 1854, for having in his possession, with intent to pass the same, counterfeited bank bills, with intent to cheat and defraud the Commercial Bank, &c. On the trial certain exceptions were taken to the ruling of the court, which will sufficiently appear in the following opinion. The cause was removed into the Supreme Court by certiorari where the same was argued at the May term, 1854, by

*D. S. Dickinson,* for the prisoner.

*Edward Quin,* (Dist. Att'y of Chemung county) for the people

*By the Court*, SHANKLAND, J.—The defendant was convicted at a late Oyer and Terminer held in Chemung county on an indictment for having in his possession false, forged and counterfeited negotiable promissory notes or bills, called bank bills, purporting to have been issued by the Commercial Bank, a corporation or company, lately located or doing banking business at Clyde, in the county of Wayne, in this state, and duly authorized for that purpose by the laws of this state, with intent to utter the same as true, with intent to defraud the said Commercial Bank, knowing the same bills to be forged, &c.

On the trial the district attorney proved the existence of said bank, by evidence, that there was such a bank in fact, keeping a banking house and issuing bills, which were passing as currency, &c. The prisoner's counsel, before such evidence was given, objected thereto, and contended that the people must prove the existence of the bank by producing an authenticated copy of its charter, because the indictment averred an intent to defraud the bank. The prisoner's counsel duly excepted to the decision; and the prisoner, having been convicted, brings the cause before this court, by certiorari. And now on the argument the prisoner's counsel mainly relies on the same objection and contends that the indictment, having averred an intent to defraud a corporation, its legal existence must be proved by the best evidence thereof, viz.: its charter or articles of association.

The case of *The People* v. *De Bow*, is cited as an authority in favor of the counsel's position. (1 *Denio*, 9.)

In that case, the defendant was indicted for having in his possession forged bank notes with intent to defraud the Bank of Warsaw. On the trial the defendant proved the existence of the Bank of Warsaw by proving the articles of association entered into by several individuals in pursuance of the act to " authorize the business of banking," by which the individuals proposed to establish a bank in the county of Genesee, by the name of the Bank of Warsaw. The association never went into operation or issued any bills. The defendant insisted that

the act, under which the association was formed, was uncon-
stitutional, because it was not passed by two-thirds of the
votes of the legislature, and that the Bank of Warsaw was
not a body capable in law of being defrauded. It will be
perceived the precise question raised in that case was, whether
the law was unconstitutional, and not, what is the *character* or
*degree* of proof of the existence of a corporation required on
a criminal trial where the intent is alleged to defraud such
corporation. As the *only evidence* of the existence of the
Bank of Warsaw was the unconstitutional act and the articles
formed under it, and as the bank had never acted as such or
attempted to exercise any of its franchises, it followed, neces-
sarily, that there was no evidence of the existence of such a
bank either *de facto* or *de jure*. It was not discussed in that
case, therefore, whether proof of a corporation *de facto* was
competent evidence of its existence or not. In the case at bar
the precise question is, whether evidence of a bank *de facto*,
by proof of its having a banking house, issuing bank bills
which pass as currency and the exercise of the usual banking
powers, is competent and sufficient evidence of its existence on
a trial against the prisoner on such an indictment as this is.

In the absence of judicial authority I should hesitate to pro-
nounce it sufficient, but if the principle has been settled,
holding it competent and sufficient, I think we are bound to
sustain the ruling in this case.

In *The People* v. *Caryl*, (12 *Wend. R.* 547) it was held that
on an indictment for stealing foreign bank bills it was not
necessary to produce the highest evidence of the existence of
the banks, such as proof of the original charters or acts of the
government incorporating the companies; but, proof that
there were such banks *de facto* was sufficient. And so, as to
the bills, it was not necessary to prove by positive testimony
that the names subscribed to them were in the handwriting of
the officers of the banks; but it should at least be proved by a
witness familiar with the bills, that he believed them to be gen-
uine. See also the case of *Johnson* v. *The People*, (4 *Denio*
*R.* 364) where a like decision was made. So, in the case of

*The People* v. S*mith Davis*, (21 *Wend. R.* 309) where the defendant was convicted of having in his possession counterfeit bank bills with intent to pass them, it was held that it was not necessary that the prosecution should produce and prove the charter of the Morris Canal company, the corporation purporting to issue the bill, and that it was enough to prove its existence by other evidences.   Nelson, J., in giving the opinion of the court, says, "under the old law (that is, previous to 1830) the existence of the company as well as the genuine or counterfeit signature of the officers (as the case might be) was frequently involved in the issue; and it must have been so in the case of altered notes; and yet *secondary evidence,* such as the *acts and operations of the institution and the like,* have been invariably received at the Oyer and Terminer."   It is true the court in that case go on to  decide that under the Revised Statutes it was not necessary to prove the existence of a corporation from which the bill *purports* to have been issued, in order to bring the case within the statute, and that it is sufficient if the bill on its face *purports* to have been issued by an authorized company, yet I consider the first point above mentioned as the enunciated opinion of the court equally with the other.

The above cases establish the rule to be that where the crime charged is the having counterfeited bank bills in possession with intent to defraud third persons, it is competent to prove the existence of the corporation or company *whose bills are forged* by acts of user; and that the best evidence is not required.   So, too, where the crime charged is stealing bank bills.   Now, is there any reason for requiring higher evidence of the existence of the corporation, in a case where the intent is charged to *defraud the corporation,* than where the intent is to defraud a third person?   It is said, yes; because if there is no such corporation the intent *charged* is not possible.   But it may be answered, *true,* but if there is no such bank its bills can not be forged and therefore the whole crime is impossible. The legal answer is, that in both cases the existence of the corporation must be established in order that the crime may be

possible and the same *kind* and *degree* of evidence that will be sufficient to establish its existence in one case will be sufficient in the other.

It would be singular, indeed, if as between the people and the prisoner, the whole nature and degree of evidence requisite to prove the *existence* of a corporation, should be changed, where the object is to convict of an intent to defraud a bank by means of forged bills on its own or another bank, and where the object is to convict of an intent to defraud by passing the said bills. I see no sound reason for a distinction of the kind contended for, and repudiate its existence.

The machine and materials for counterfeiting coin, &c., found in the prisoner's possession at the same time the counterfeited bills were, were properly received in evidence for the purpose of proving *guilty knowledge* of the prisoner, as to the bills, &c., in question.

The court was not in an error for refusing to charge as required by the prisoner's counsel that the jury must be satisfied the prisoner had the spurious bills with intent to pass them within the jurisdiction of this state in order to convict.

In my opinion the prisoner was legally convicted and sentence should pass against him.

The court concurred in the above opinion, and the prisoner was sentenced to the state prison.