James Legg, William T. Iglehart and George Wells, Jr. vs. The Mayor, Counsellor and Aldermen of the City of Annapolis.

*Presumption arising from the due Authentication of a Statute, that it was Constitutionally enacted by the Legislature, may be overcome by competent Evidence— What is essential to the Validity of a Statute— When the Court may look behind the Printed Statute, in deciding as to the Time when it took Effect, &c.— When an Act of Assembly should be declared a Nullity— Practice in respect to an Answer to a Petition for a Mandamus—Practice in the granting of a Mandamus—Character of Evidence necessary to Invalidate a Statute—Onus of Proof upon those Denying the Validity of a Statute—Statute not to be declared Invalid upon the Allegations and admissions of Parties engaged in an adverse Litigation—Mandamus.*

While the presumption, arising from the proper forms of authentication of a statute, is very strong that the statute was regularly and constitutionally enacted by the Legislature, such presumption may be overcome by competent evidence, and the statute be shown to have never been constitutionally enacted.

A valid statute can only be passed in the manner prescribed by the Constitution, and when the provisions of that instrument, in regard to the manner of enacting laws, are wholly disregarded in respect to a particular Act, it must be declared a nullity, though having the forms of authenticity.

Whenever a question arises in a Court of law as to the existence of a statute, or as to the time when it took effect, or as to its precise terms, the Judges who are called upon to decide such question, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; the best and most satisfactory evidence in all cases being required.

Legg, *et al. vs.* Mayor, &c. of Annapolis.

An Act of Assembly which can be shown by undoubted and competent evidence, never to have passed the two Houses of the Legislature, substantially, as it was approved by the Governor, sealed with the Great seal, and published, is a nullity; and it is the duty of the Court so to declare it.

If the answer to an application for a mandamus contains or sets up any sufficient reason for refusing the writ, though it be in other respects evasive and irresponsive, it should not be quashed as a whole.

Where the answer to a petition for a mandamus is quashed, the allegations of the petition are not authorized to be taken *pro confesso;* nor is the Judge authorized to enter judgment as by default for want of answer, or by *nil dicit.* The case must be heard *ex parte,* and the mind of the Judge satisfied both as to the law and the facts, before the writ can be ordered.

The question, raised by an application for a mandamus, whether a statute has been constitutionally enacted by the Legislature, cannot be tried upon mere *ex parte* affidavits, nor upon any other than the best and most reliable evidence.

On an application for a mandamus, the right to which depends upon the question whether a certain public statute, appearing in the statute book, with all the prescribed forms of authentication, is valid or not, the onus of proof is upon the applicants, with a strong presumption against the right asserted by them; and before that right can be recognized and judicially declared in the face of a public statute, having almost a conclusive presumption in its support, the applicants are bound to furnish the most conclusive evidence of the truth of the facts upon which they rely to invalidate the statute.

It is not competent for parties, though engaged in an adverse litigation, to procure a public statute, affecting the public interest, to be declared a nullity, upon their mere allegations and admissions, as to the manner in which the statute was enacted by the Legislature. Proof of a higher and more reliable character should be required in such case.

Mandamus is a writ commanding the *performance* of some act or duty therein specified, in the performance of which the applicant for the writ is interested, or by the non-performance of which he is aggrieved or injured. As a preventive remedy simply, it is never used. Its use is confined to those occasions where the law has established no specific remedy, and where in justice and good government there ought to be one.

A mandamus does not lie to prevent a person from being disturbed or molested in the exercise of the functions and powers pertaining to his office.

APPEAL from the Circuit Court for Anne Arundel County.

The appellees by their petition, filed on the 15th of June, 1874, represented that they were the corporate officers of the City of Annapolis, a city incorporated in 1708—that the charter of the city had been amended from time to time; the last time by the Act of 1870, ch. 202, and that under that charter the petitioners and their predecessors had exercised the rights and powers and performed the duties of a municipal corporation; and in the exercise of such powers they had appointed a police force which was then in the discharge of its duties.

The petitioners further represented that the Governor of Maryland had undertaken to appoint the appellants, under the title of "The Board of Police Commissioners for Annapolis City," claiming the right so to do under a pretended law, entitled "An Act to add sub-sections to Article II of the Code of Public Local Laws, title Anne Arundel County, sub-title Annapolis, to provide a Board of Police Commissioners for Annapolis City," chapter 421, which purports to have been approved by the Governor on the 11th of April, 1874, in the presence of the Speaker of the House of Delegates, and the President of the Senate; and the petitioners charged that said pretended law was not a law, the same never having been passed or approved as required by the Constitution of the State of Maryland, to give validity thereto.

They charged that a bill, having for its object the appointment of Police Commissioners for Annapolis City, was introduced in the House of Delegates, at the late session of the General Assembly of 1874, and was passed by the House of Delegates on the 30th of March, 1874, and sent to the Senate; that it was reported from a committee of the Senate, on the 3rd of April, 1874, to the Senate, but that on or about the 6th of April, 1874, before any vote had been taken on said bill by the Senate, it was lost, or mislaid or purloined, and removed from the Senate

Chamber, and was never afterwards before the Senate for its action. That after the removal of the said bill had been discovered, a draft of another bill for the appointment of Police Commissioners for Annapolis City was prepared, and upon the said draft of a bill entries were made, professing to be in conformity with the action of the House of Delegates upon the bill which had been lost or mislaid, &c., and also entries professing to be in conformity with the action of the Senate; that the said draft thus prepared, was presented to the Senate, and the Senate afterwards passed the same by yeas and nays; that the said draft of a bill thus passed by the Senate, was not the bill which had been passed by the House of Delegates, but was different in fact and in its contents therefrom; and that the bill, or draft of a bill, thus passed by the Senate alone, was afterwards submitted to the Governor, and was that which it was alleged was approved by him on the 11th of April, 1874.

They further charged that the bill which as aforesaid passed the House of Delegates, was different in many particulars from that which passed the Senate, that the said House bill never passed the Senate, and never was approved by the Governor, and that neither the one nor the other of said bills, or drafts of bills, nor any other bill having reference to the appointment of Police Commissioners for Annapolis City, passed both the Senate and the House of Delegates, at its recent session, and therefore that the General Assembly of the State of Maryland passed no bill conferring or attempting to confer the power of appointment so as aforesaid claimed to have been exercised by the Governor. The petitioners filed an authenticated copy of the pretended law, so as aforesaid signed by the Governor, and the original draft of a law, which passed the House of Delegates and was, as heretofore charged, lost or mislaid, &c., which original draft of the bill in the envelope now surrounding the same and directed to the Counsellor of the

City of Annapolis was received by him through the post-office of Annapolis, on the 14th of May, 1874, but from what source the same was received, was wholly unknown to the petitioners.

The petitioners further charged that the said draft of a bill so substituted in and passed by the Senate of Maryland, was not signed by the Governor of Maryland on the 11th of April, 1874, in the presence of the Speaker of the House of Delegates, and the President of the Senate, as was endorsed thereon; and the said draft of a bill was not signed by the Governor, "in the presence of the presiding officers and chief clerks of the Senate and House of Delegates," as required by the provisions of section 30, of Article 3 of the Constitution of the State of Maryland. They also charged that the said draft of a bill so substituted in and passed by the Senate, was not signed at all by the Governor, either in or out of the presence of said officers, until Tuesday, the 14th of April, 1874, and after the time limited by the Constitution of the State of Maryland, for the signing and approving by the Governor of bills passed by the General Assembly of Maryland, had expired. And they further charged that the signature and approval of the Governor endorsed upon said draft of a bill could not, under the circumstances before mentioned, constitute the same a law or give any validity thereto, even if the same had been passed by the General Assembly of Maryland, in conformity with the requirements of the Constitution of this State. And further, that the pretended law was unconstitutional also, in that it embraced two or more subjects not described in its title.

The petitioners charged that by "sub-section A," of the pretended law, it was provided as follows: "On the first Monday of May, 1874, the Governor of the State shall appoint three persons, residents of the City of Annapolis, one for two years, one for four years, and one for six years, to serve without compensation as a Board of Police Com-

missioners for said city," &c.　And they believed that it was under the authority, intended to be conveyed and granted by this sub-section, that the Governor of the State claims to have acted in making the appointments aforesaid, but the petitioners averred that he did not make them on the said first day of May, but that in fact said appointments were not made until the 11th of June, 1874.

And the petitioners insisted that the designation of the time named in the said sub-section was imperative, and was intended as a limitation upon the power of the Governor in making said appointments, for one reason, among others, because the city tax levy was usually made shortly after the first day of May in each year, and it was expedient that the Corporation of Annapolis should know before-hand what sum they would be required to levy upon the property in said city to meet the probable expense of police, among other charges, for the year.　And that the time having passed at which the Governor was required to make said appointments, if at all, he had, at the time of said appointments, no power in the premises to make the same, even if the said pretended law had been passed by the General Assembly, and signed and approved by the Governor in conformity with the requirements of the Constitution of Maryland.

The petitioners also charged, that the appellants had accepted the appointments so attempted to be conferred on them as aforesaid, or intended to accept the same, and had announced their purpose and intention, and undoubtedly proposed and designed, unless restrained from so doing, to exercise all and singular the powers pretended to be conferred on them as a Board of Police Commissioners by said pretended law.

The petitioners thereupon prayed the Court to lay a rule upon the appellants requiring them to show cause, within a time to be specified, why a writ of mandamus should not issue, and that upon the return of the said rule, a writ of

mandamus might issue, commanding the said appellants to surcease and desist from exercising, or assuming to exercise in any manner, any power or authority, or jurisdiction under the said pretended Act of 1874, ch. 421, by the appointment of police or otherwise; and might be further commanded to abstain from interfering or attempting to interfere with the police and Police Department established by the petitioners under their charter and ordinances, and from hindering, obstructing, resisting or opposing the executive officers of said city, in the exercise of their lawful powers, and in the discharge of their official duties.

An order was passed requiring the appellants to show cause why a writ of mandamus should not issue as prayed, on or before the 25th of June, instant, &c.

On the 25th of June the appellants filed their answer, by which they admitted that the petitioners were the corporate officers of the City of Annapolis, and had heretofore exercised the rights claimed in the first part of their petition.

They also admitted that the respondents had been appointed the Board of Police Commissioners for Annapolis City by the Governor of the State, under the Act of 1874, ch. 421, which is the only law in force in reference to the police of the City of Annapolis.

As to sundry of the averments of the petition, the respondents charged that they could not lawfully be enquired of by the Court in this proceeding.

The respondents denied the averment in the petition that said law was unconstitutional, in that it embraced two or more subjects.

As to so much of the petition as charged that the law requiring the Governor to appoint, on the first Monday of May, 1874, the Board of Police Commissioners for Annapolis, was imperative as to the time of making said appointments, and intended as a limitation upon the power

of the Governor over said appointments, the defendants demurred, insisting that said law conferred the power of appointment on any subsequent day to the said first Monday of May, 1874.

The defendants admitted that they had accepted the appointment of Police Commissioners, as charged in said petition, and intended to perform the duties devolving on them as such, according to the law under which they were appointed.

They denied the right of the petitioners to the writ of mandamus and their right to restrain the defendants in the exercise of their rights under the law, and in their efforts to establish a competent and trustworthy police, in the City of Annapolis, for the protection of its property and its citizens.

The defendants, insisted that the writ of mandamus should not issue in this case, commanding them to surcease and desist from exercising or assuming to exercise, in any manner, any power or authority or jurisdiction under the said Act of 1874, ch. 421, because if the petitioners were entitled to any such relief, the proceeding by mandamus was not the appropriate remedy for the purpose.

The appellees having obtained permission of the Court to amend their petition, stated by way of amendment that they had charged in their petition " that a bill having for its object the appointment of Police Commissioners for Annapolis City, was introduced into the House of Delegates at the late session of the General Assembly of 1874, and was passed by the House of Delegates on the 30th of March, 1874, and sent to the Senate;" and that in various parts of said petition they spoke of this bill as having been passed by the House of Delegates; but they had lately discovered and therefore charged by way of amendment to their petition, that the said bill never was properly engrossed for a third reading in the House of Delegates, and never was

reconsidered by said House after having been lost therein for want of a constitutional majority, and that in fact neither the said bill nor any other bill relating to such Commissioners passed the said House of Delegates in conformity with the Constitution of this State.

And that they had also recently discovered and therefore charged by way of further amendment to their aforesaid petition, that there was no bill relating to the appointment of Police Commissioners for Annapolis City that was read on three different days of the session, in the Senate of Maryland, at the session of 1874, as required by the Constitution ; nor was the said requirement dispensed with in the only constitutional manner in which it could be dispensed with, by a two-thirds vote of the Senate; and that in fact no bill relating to such Police Commissioners passed the Senate in conformity with the Constitution of this State, all of which matters and averments would fully appear by reference to the Journals of the two Houses of the General Assembly of Maryland of 1874.

The defendants by way of showing cause against the amended petition, averred that they ought not to be required to answer the same, because the Court had no jurisdiction to take cognizance of the matters therein alleged.

Upon motion of the petitioners, the answer and plea of the defendants were quashed ; and thereupon the petitioners moved that judgment be given in their favor for want of an answer or plea, and that a peremptory writ of mandamus be granted without delay against the defendants. This motion was granted and the writ ordered and issued.

From the ruling of the Court quashing the answer and plea of the defendants, as also from the order awarding the writ of mandamus, the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, ALVEY and ROBINSON, J.

*Henry Aisquith and William H. Tuck,* for the appellants.

The Constitution, after directing how the Legislature shall enact laws, directs (Art. 3, section 30,) how those laws shall be preserved, and how the evidence of their existence shall be certified to the Courts "in the same manner as has been heretofore usual in this State." This, then, is the best evidence of the existence of a law, the most certain and absolute, and it would violate the very first rule of evidence when the *best* evidence has been introduced, to admit other evidence which in its very nature cannot be as good, to contradict it.

The engrossed copy of a law sealed with the Great seal and filed in the clerk's office according to the provisions of the Constitution is a record, *a constitutional record,* of an Act of the Legislature, as much so as the record of a Court. In England the mode of preserving and perpetuating such statutes resembles the mode we have adopted. See 5 *Comyn Dig., Parliament, G,* 22; 2 *Phill. Ev.,* 2, (4 *Am. Ed.*) 1 *Starke Ev.,* 231, *marg., 7th Am. Ed.*

In this country the Courts take notice of the public Acts of the Legislature, upon the same principle as in England. *Green. Ev.,* sec. 479.

We contend that the record of a public Act of the Legislature of this State is the enrolled or *engrossed* bill, clothed with the solemnities required by the Constitution and filed in the office of the clerk of the Court of Appeals. The signature of the Governor in the presence of the presiding officers and chief clerks of the Senate and House of Delegates, and the sealing with the Great seal, are required in attestation that the bill was passed in due form. No other record of the Act is required to be kept, and of necessity it must have been intended that the Act so sanctioned and required to be preserved, shall constitute a record with the incidents appertaining to such a record at common law, importing absolute verity which no evidence is allowed to contradict, and a compliance with all the

forms necessary to its validity. That a Court cannot go behind the record of a law thus made, has been solemnly adjudicated and settled by careful and elaborate opinions in the following States. *Pacific R. R. vs. Governor*, 23 *Mo.*, 353, 362, 369 ; *Clare vs. State*, 5 *Iowa*, 509 ; *Duncombe vs. Prindle*, 12 *Iowa*, 10 *and* 11 ; *People vs. Devlin*, 33 *N. Y.*, 278, 286 ; *Pangborn, et al. vs. Young*, 32 *N. J.*, 29 ; *Evans vs. Browne*, 30 *Ind.*, 519, 526 ; *Green vs. Weller, et al.*, 32 *Miss.*, 650 ; *Louisiana, &c., Lottery Co. vs. Richoux*, 23 *La. Ann* , 743 ; *Dowling vs. Smith*, 9 *Md.*, 242 ; *Fouke vs. Fleming & Douglass*, 13 *Md.*, 392 *and* 412, 413 ; *Mayor, &c., of Annapolis vs. Harwood and Wife*, 32 *Md.*, 471.

The objection that the Act embraced two subjects, is not well taken, as a careful examination will show. All the provisions relate to the main object of the Act, and are necessary to give it full effect. *Parkinson vs. State*, 14 *Md.*, 184 ; *Gunther vs. Dale County*, 44 *Ala.*, 639.

The validity of a duly authenticated statute is not to depend on the averments or admissions of parties to a cause ; it is the duty of Courts to declare what the law is, no matter what one party may say, or the other omit to say, on the subject.

The Code, Art. 59, sec. 9, provides that if an answer is not filed in time, the "Judge shall thereupon proceed to *hear* the said motion *ex parte*, * * * and if he shall be of opinion that the *facts* and *law of the case* authorize the granting of a mandamus as prayed, he shall order," &c. This imposes on the Judge the duty of ascertaining whether a proper construction of the law, applicable to the facts stated, entitles the party to the remedy invoked. But how are the facts to be ascertained? Must the allegations in the petition be taken as true, at all events, or must there be proof? If, in such a state of case, proof is not necessary, and the Court could in an ordinary case, *inter partes*, consider the averments as true, it would not follow that the result would be the same in a case like this, where

the only material averments embrace matters affecting the existence and validity of the law itself. The facts contemplated by the Code, are those that affect the rights of the parties under existing laws; such facts as may be conceded or denied by the other side in pleading, not such as, if allowed to be proved, and to control the decision of the cause, might have the effect of expunging from the archives of the State an Act of Assembly, passed, apparently, with all the requisite solemnities. In ascertaining whether a party is entitled to relief, Courts may sometimes have to inquire whether the law under which the writ may be demanded, is constitutional or not, but that would not involve the inquiry whether it had been passed in the *manner* prescribed by the Constitution.

*Ex parte* and *pro confesso* have not the same meaning and effect. There are various instances in which Courts are authorized to proceed *ex parte,* but in such cases some proof must be produced to satisfy the judgment and conscience of the Court at the hearing.

A Court is never obliged to grant the writ. The Code does not take away the Common Law discretion. *Hardcastle vs. Md. & Del. R. R. Co.,* 32 *Md.,* 35.

The answers were properly in the cause, and the motion to quash ought to have been overruled and the petitioners required to plead or demur to the answers.

It was not necessary for all the defendants to swear to the answers, any more than that all the members of the City Corporation should have verified the petition by their several oaths. The Court will take judicial notice that this public corporation is composed of a Mayor, Counsellor and five Aldermen. The defendants were impleaded, not as individuals in a personal capacity, but in their official capacity as composing the Board of Police Commissioners. See *Mayor, &c. of Baltimore vs. Police Comm'rs,* 15 *Md.,* 376; *State, ex rel., &c. vs. County Comm'rs of Balto. Co.,* 29 *Md.,* 516.

Mandamus was not the appropriate remedy. - The practice in mandamus cases, involving matters of public interest and concern, is to file the petition in the name of the State, upon the relation of the Attorney General, or of some other person, but that form is not followed here, and there was no case properly before the Court to sanction the writ.   There may be exceptions, but the general practice is as stated.   *State, ex rel., &c. vs. Comm'rs of Baltimore Co.,* 29 *Md.,* 516 ; *State, ex rel., &c. vs. Graves, &c.,* 19 *Md.,* 351 ; *The People, ex rel., &c. vs. Kilduff,* 15 *Ill.,* 492.   The same practice is observed in cases in equity. *Lucas, et al. vs. The Lottery Commissioners,* 11 *G. & J.,* 490.

Full, adequate and specific relief could have been obtained by an injunction.   In *Rex vs. Free Fishers, &c. of Whitstable,* 7 *East,* 356, and *Rex vs. Bank of England,* 2 *B. & Ald.,* 622, writs were refused, because there was a complete remedy in Chancery.

*J. Wirt Randall, Alex. B. Hagner* and *Frank H. Stockett,* for the appellees.

The Court was right in quashing the answer and plea of the defendants to the petition and amended petition for *mandamus.*

1st.  Because neither of the papers in question was sworn to by all the defendants as is required by the law and practice.   *Code Pub. Gen. Laws, Art.* 59, *secs* 2, 3, 4 ; *Ev. Pr.,* 522-3.   2nd. Because neither of said papers is such an answer as is required by law, as they neither admit nor deny the allegations of the petition and amended petition, nor reply with certainty to the same, but contain irrelevant matter, and are evasive and inconsistent.   *Tapping on Mandamus,* 76 *L. L., secs.* 352-3-7-8-9, 402.   3rd. Because said answer and plea are double, and while professing to raise questions of law, undertake to avoid admissions of fact.   *Tapping on Man., sec.* 357.   4th. Because

neither of said papers could have been received as pleas to the jurisdiction of the Court, because they were not filed by the proper person, nor at the proper stage of the case, nor in proper form. *Evans Pr.*, 239-40; 1 *Ba. Ab. Abatement, A;* 5 *Robinson's Pr.*, 2, 6, 9; 1 *Ch. Pl.*, 412; 2 *Wms. Saunders*, 209, *b. c.*

The answer and plea having been quashed, and the defendants not pleading over, the Court was right in hearing the case *ex parte* upon the facts and law presented by the petition and amended petition. *Code, Art.* 59, *sec.* 9; *Ev. Pr.*, 522.

But whether the Court was right in quashing the answer and plea or not, the case is alike presented upon the undisputed and sworn statements of the petitioners, and these are sufficient to maintain the decision of the Court below in awarding the peremptory *mandamus.*

The averments of the petitioners which were sworn to, and not disputed, show that the Act in question was unconstitutional. *Constitution, Art.* 3, *secs.* 19, 27, 28 *and* 29; *Art.* 2, *sec.* 17.

As no bill is to become a law unless the provisions of the Constitution in respect to such bill, are complied with, who is to decide whether or not a bill has properly passed, or, in other words, become a law? This power resides in the Courts alone.

The error contained in the view taken by the appellants and their authorities, is based upon an attempt to find a precise parallel between an Act of Parliament and an Act of a Legislature hemmed in and restricted by a written Constitution. The parallel does not exist, and any conclusions to be based upon it are alike unsubstantial.

Even in England the Courts have held, not only that they would set aside an Act of Parliament contrary to natural right and justice, but that they would consult other evidences than the printed Act to ascertain what law, if any, had been passed by Parliament. *Rex vs.*

*Jefferies,* 1 *Strange,* 446; *Spring vs. Eve,* 2 *Mod.,* 240; *Price vs. Hollis,* 1 *M. & S.,* 106; *Rex vs. Shaw,* 12 *East,* 479; 1 *Kent's Com.,* (448,) *et seq.; Doctor Bonham's Case,* 8 *Co.,* 118; *Day vs. Savadge, Hob.,* 87, (*marg.*); *City of London vs. Wood,* 12 *Mod.,* 687; *Reed & Mix vs. Clark,* 3 *McLean,* 480; *Doe dem. Bacon vs. Brydges,* 46 *Eng. C. L.,* 282; 2 *Salkeld,* 566; *Rex vs. Barnett,* 3 *Camp.,* 344.

Upon what evidence are the Courts to act? Between these parties there is no necessity for proof; the facts stand sworn to and undisputed upon the record.

If proof, other than the sworn statements of the petition, had been demanded by the defendants, it would have been furnished, and it is too late now for the defendants, after having refused to deny the statements of the petition by plea or answer, to attempt this denial in argument.

As evidence of the truth that the bill found among the printed laws, never was acted upon or voted upon by the House of Delegates at all, the appellees filed with their petition the original bill; which was acted upon by the House of Delegates, (but not passed, as the appellees contend,) and was afterwards lost or stolen in the Senate Chamber. This bill, is the only bill on the subject ever acted upon by the House at all, and differed from the bill substituted in the Senate and published among the laws, in sundry particulars.

That the House and Senate acted on different bills, in fact and substance, is not and cannot be denied; and the Court is now called upon by the appellants to give the effect of law to a bill which never was before one of the co-ordinate branches of the General Assembly at all.

If other evidence of the unconstitutional action of the two Houses, than the above is required, the Court may properly resort to the Journals of those bodies, or to any other sources of evidence that will satisfy the judicial mind. This doctrine is upheld by the best writers on Constitutional and Statutory law. *Sedgwick on Stat. &*

*Con. Law*, 69; *Cooley's Con. Lim.*, 78, 135, 150; *Smith's Com. on Stat. & Con. Law*, 949-50-51-52, *secs.* 833-4-5-6; *Cushing on Legislative Assemblies*, *secs.* 2211, 2212, 2219, 2222, 2405.

There is nothing in our own decisions to the contrary, in fact some of them show that this Court has resorted to the Legislative Journals, and they never have refused to go behind the Act filed in the office of the Clerk of the Court of Appeals, except to vary its contents, where it was admitted that the Act had passed. *Dowling vs. Smith*, 9 *Md.*, 242-78; *Fouke vs. Fleming & Douglass*, 13 *Md.*, 392; *Mayor, &c. of Annapolis vs. Harwood and Wife*, 32 *Md.*, 470-79. The Journals are to be deposited in the office of the Clerk of the Court of Appeals, and are made evidence. *Art.* 37, *sec.* 49, *of Code of Pub. Genl. Laws, and Art.* 76, *sec.* 2.

That it is the right and duty of the Courts where the passage of an Act is questioned to look behind the printed statute, has been repeatedly maintained by decisions in many States of the Union, and in the Supreme Court. *Douglass vs. Bank*, 1 *Mo.*, 24; *The People vs. Purdy*, 2 *Hill*, 37; *State vs. McBride*, 4 *Mo.*, 306-7; *DeBow vs. The People*, 1 *Denio*, 19; *Coleman vs. Dobbins*, 8 *Ind.*, 156; *The People vs. Supervisors, &c.*, 8 *N. Y.*, (4 *Seld.*,) 317; *Fowler vs. Peirce*, 2 *Cal.*, 168-9; *Skinner vs. Deming*, 2 *Carter*, (*Ind.*,) 558; *Jones vs. Hutchinson*, 43 *Ala.*, 723; *Green vs. Graves*, 1 *Dougl.*, (*Mich.*,) 351; *Nesmith vs. Sheldon*, 7 *How.*, (*U. S.*,) 812; *State vs. Platt*, 2 *S. Car.*, (*N. S.*,) 150; *Speer vs. Plank Road*, 22 *Pa.*, 376; *The Southwark Bank vs. The Commonwealth*, 26 *Penn.*, 450; *Spangler vs. Jacoby*, 14 *Ill.*, 299; *Prescott vs. Trustees, &c.*, 19 *Ill.*, 326; *Turley vs. The County of Logan*, 17 *Ill.*, 151; *The People vs. Starne*, 35 *Ill.*, 121, 141; *The People vs. Hatch*, 33 *Ill.*, 13; *The People vs. De Wolf*, 62 *Ill.*, 253; *Green vs Weller, et al.*, 32 *Miss.*, 692, (705, 723, &c., Smith Dis.;) *Opinion of the Judges*, 35 *N. H.*, 579;

*Opinion of the Judges,* 45 *N. H.,* 607; *Opinion of the Judges,* 52 *N. H.,* 623; *Gardner vs. The Collector,* 6 *Wallace,* 499, 508; *Miles vs. Stevens,* 3 *Barr,* 41; *Watkins vs. Holman,* 16 *Peters,* 56; *Albertson vs. Robeson,* 1 *Dal.,* 9.

The Act, is also unconstitutional, because it was not signed by the Governor within the time fixed by the Constitution. The Legislature adjourned on the 6th of April, 1874; the signature of the Governor to the bill is dated April 11th, 1874, but it is alleged, and not denied, that the Act was not in fact signed until the 14th of April, 1874. This is a matter that the Courts will inquire into. *People vs. Hatch,* 19 *Ill.,* 283; *Fowler vs. Peirce,* 2 *Cal.,* 168, 173; *Gardner vs. The Collector,* 6 *Wallace,* 508; *Solomon vs. Commrs., &c.,* 41 *Ga.,* 157.

The Act in question is also repugnant to the Constitution in that it embraces two or more subjects. *The People vs. Commissioners of Highways, &c.,* 53 *Barb.; Speer vs. Plank Road,* 22 *Pa.,* 376; 3 *Md. Dig.,* 6.

Even if the Court should decide the Act in question constitutional or decline to consider the question, the appointments made by the Governor under it are invalid because made after the time fixed by the law itself. *Ellicott vs. Levy Court,* 1 *H. & J.,* 360; *Kerr vs. State,* 3 *H. & J.,* 560; *State, use of the Levy Ct. vs. Merryman,* 7 *H. & J.,* 79; *Commrs. Pub. Schools vs. Co. Commrs. Allegany Co.,* 20 *Md.,* 450; *Smith's Com. Con. & Stat. Law,* 679.

Mandamus was the proper remedy. *Tapping on Man.,* (76 *L. L.,*) secs. 3-10 (*note f.;*) secs. 11, 12, 19, 55, 297; *Marshall vs. Harwood,* 9 *Md.,* 96; *Moses on Mandamus,* 16, 17, 59; *State, ex rel. Kelly vs. Mayor, &c.,* 35 *N. J., Law Rep.,* 197.

ALVEY, J., delivered the opinion of the Court.

In this case, application was made by the appellees for the writ of mandamus to be directed to the appellants, and upon that application a rule was made requiring the

appellants to answer by a named day. The appellants answered, but the answer, being regarded as insufficient, was, upon motion of the appellees, quashed; and thereupon the appellees moved that judgment be given in their favor, for want of an answer or plea, and that a peremptory writ of mandamus be granted without delay against the appellants. This motion was granted, and the writ ordered to be issued. It is from that order that the present appeal was taken.

The case has been very fully and ably argued, and many questions have been discussed of peculiar interest and nicety; but of the questions presented we propose to decide only those which seem to be leading and controlling in the controversy.

1. Whether any evidence be admissible to show that an Act of the last Legislature, chapter 421, to provide for the appointment of a Board of Police Commissioners for the City of Annapolis, was not constitutionally enacted, that Act having all the forms of authentication prescribed by the Constitution?

2. If evidence be admissible for such purpose, whether, after quashing the answer of the appellants, the Court below should have heard the evidence to impeach the validity of the statute, instead of taking the allegations of the appellees as confessed for want of answer thereto?

3. And finally, whether the allegations of the appellees, assuming them to have been either confessed or proven, constituted a proper case for the issue of the writ of mandamus?

The determination of these questions would seem to embrace all the material points of controversy between the parties.

1. While the presumption arising from the proper forms of authentication of a statute is very strong that the statute was regularly and constitutionally enacted by the Legislature, the authorities maintain that such presump-

tion may be overcome by competent evidence, and the statute be shown to have never been constitutionally enacted. And this Court have so decided, at the present term, in the case of *Berry vs. The Drum Point Railroad Co.*, 41 *Md.*, 446. A valid statute can only be passed in the manner prescribed by the Constitution, and when the provisions of that instrument, in regard to the manner of enacting laws, are wholly disregarded, in respect to a particular Act, it would seem to be a necessary conclusion that the Act, though having the forms of authenticity, must be declared to be a nullity. Otherwise the express mandatory provisions of the Constitution would be of no avail or force whatever.

In the case to which we have just referred, of *Berry vs. The Drum Point R. R. Co.*, we decided, adopting the conclusion of the Supreme Court of the United States, in *Gardner vs. The Collector, 6 Wall.*, 499, that whenever a question arises in a Court of law as to the existence of a statute, or as to the time when it took effect, or as to its precise terms, the Judges who are called upon to decide such question, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question ; the best and most satisfactory evidence in all cases being required.

If then it be true, as alleged in the petition of the appellees, that the Act in question never in fact passed both Houses of the Legislature, substantially, as it was approved by the Governor, sealed with the Great seal, and published, and that fact can be clearly and indubitably established by competent evidence, it follows that the Act is a nullity, and the Court would have so to declare it.

2. We come now to the second question, that is, as to the proper mode of proceeding upon quashing the answer of the appellants.

The appellants contend that their answer was improperly quashed ; that it contained sufficient cause against the

issuing of the writ, and though it was evasive in some of its parts, it should not have been quashed as a whole.

According to present practice, as prescribed by the Code, Art. 59, the answer to the applicant's petition, filed under rule, stands in the place of the return to the alternative writ under former practice, and it is not required to be more specific or certain in the statement of the defences upon which the defendant relies, than was required in the return to the alternative writ. It was not essential, in order to support the return, that every part of it should be good; it was sufficient if enough was made to appear to constitute a full justification for what was complained of, or a good legal reason why the mandamus should not be issued ; and if a return was good in part, and bad in part, the good part could be separated from that which was bad. *Rex vs. Archbishop of York*, 6 *T. Rep.*, 493 ; *Rex vs. Mayor of London*, 3 *B. & Adol.*, 268. If therefore the answer in this case contained or set up any sufficient reason for refusing the mandamus, though it was in other respects evasive and irresponsive, it should not have been quashed as a whole.

But assuming, without deciding, that the answer was properly quashed, what was then the proper mode of proceeding, in the absence of an answer. The Code, Art. 59, sec. 9, provides that "If the defendant shall neglect to file his answer to the petition by the day named in the order of the Judge, after being served with notice thereof, the said Judge shall thereupon proceed to *hear* the said motion *ex parte*, within five days thereafter, and if he shall be of the opinion that the *facts and law* of the case authorize the granting of a mandamus as prayed, he shall thereupon, without delay, order a peremptory mandamus to issue ;" and by the next succeeding section it is provided, that if the Judge shall upon such *ex parte hearing* be of opinion that the facts and law of the case do not authorize the granting of a mandamus, he shall dismiss the petition with costs.

In this case, we think the learned Judge below fell into error in supposing that he was required to act upon the allegations of the petition as if they had been confessed, or to assume that they were true, because the appellants had failed to make sufficient answer to them. The statute, according to our understanding of it, does not contemplate such a mode of proceeding. From the very nature of the remedy itself, and the circumstances under which it is ordinarily applied for, it would seem to be proper that the Judge should not only be able to see that the application presents a proper case for the issue of the writ, but that the facts upon which the application is based are made to appear with reasonable certainty. Hence, in the absence of an answer, the Judge is required to *hear* the case *ex parte;* that is, to allow the applicant to produce his proof, to satisfy the mind of the Judge, that the allegations of the petition are founded in truth ; and if upon such *ex parte* hearing the Judge should be of opinion that the *facts and law* of the case authorize the granting of the writ, he orders it to issue, but if not of that opinion he is required to dismiss the petition with costs. The allegations of the petition are not authorized to be taken *pro confesso;* nor is the Judge authorized to enter judgment as by default for want of answer, or by *nil dicit.* The case must be heard, and the mind of the Judge satisfied, both as to the law and the facts, before the writ can be ordered

Here, the question upon which the right depends is, whether a certain public statute, appearing in the statute book, with all the prescribed forms of authentication, is valid or not. By the petition of the appellees facts are alleged, which, if true, and are proven by competent and sufficient evidence, will require the Court to declare the statute void. But the question whether a statute has been constitutionally enacted by the Legislature cannot be tried upon mere *ex parte* affidavits, nor upon any other than the

best and most reliable evidence. As opposed to the allegations of the petition, the statute itself, as published by authority, furnished at least a strong *prima facie* cause against granting the writ; and of the statute the Court was bound to take judicial notice. The *onus* of proof was upon the appellees, with a strong presumption against the right asserted by them, and before that right could be recognized and judicially declared, in the face of a public statute, having almost a conclusive presumption in its support, the appellees were bound to furnish the most conclusive evidence of the truth of the facts upon which they rely to invalidate the statute. It is a question as to the existence of a law, upon which the rights and obligations of the parties, and also of the public, depend, and the inquiry proposed is one addressed exclusively to the Judge. It is not a question to be submitted to the jury, but it is the duty of the Judge or Court, whenever such a question is made, to exact the most convincing evidence, and to declare the statute assailed valid or invalid, as the judicial mind may conclude, upon the evidence produced. *De Bow vs. The People,* 1 *Denio,* 9.

To allow a public statute to be invalidated and set aside upon the mere allegations of a party, though under oath, as to the manner of its enactment, would be not only an unprecedented proceeding, but one fraught with the most serious consequences. Indeed, the Court would not be justified, in such case as this, in taking the admissions or confessions of the defendant as evidence upon which to declare a public statute a nullity. The public are interested in maintaining the statute, and it is not competent to parties, though engaged in an adverse litigation, to procure a public statute, affecting the public interest, to be declared a nullity, upon their mere allegations and admissions, as to the manner in which the statute was enacted by the Legislature. Proof of a higher and more reliable character should be required in such case.

3. The next and last question is, whether the petition of the appellees presented a case proper for the issue of a mandamus; and this question is important to be decided, as upon its decision depends whether the case shall be remanded, or be dismissed, without further proceeding.

According to the allegations of the petition in this case, the appellees are in office exercising all the duties and functions thereof, and the appellants, though appointed to the new office created by the statute of 1874, chapter 421, have not entered upon the duties of that office, and have in no manner interfered with the appellees in the exercise of the office they hold. The appellants are not charged with withholding anything that pertains to the office of the appellees, nor even with exercising powers and privileges that are in conflict with those exercised by the latter. It is alleged that the appellants have been appointed by the Governor under the Act of 1874, as Police Commissioners, and that, as the appellees are informed, they have accepted the appointment, or intend to accept the same, "and undoubtedly propose and design, unless restrained from so doing, to exercise all and singular the powers pretended to be conferred on them as a Board of Police Commissioners, by said pretended law." The petition then proceeds to pray that a writ of mandamus may issue to the appellants, "commanding them, and each of them, to surcease and desist from exercising, or assuming to exercise, in any manner, any power or authority or jurisdiction under the said pretended Act, by the appointment of any police or otherwise; and further commanding them, and each of them, to abstain from interfering, or attempting to interfere, with the police department established by your petitioners, under their said charter and ordinances, and from hindering, obstructing, resisting or opposing, the executive officers of said city, in the exercise of their lawful powers, and in the discharge of their official duties."

This is the usual prayer for an injunction, in a bill in equity, to restrain an unlawful interference with rights; but we are not aware of any precedent for the use of the writ of mandamus to accomplish such a purpose. *Mandamus* is a writ commanding the performance of some act or duty, therein specified, in the performance of which the applicant for the writ is interested, or by the non-performance of which he is aggrieved or injured. *Reg. vs. Bishop of Chichester,* 2 *Ell. & Ell.,* 209. But as simply a preventive remedy it has never been used, so far as we have been able to discover. The nature of the writ, and the end for which it was framed, direct upon what occasions it should be used. It was introduced to prevent disorder from a failure of justice, and defect of police. Its use is therefore confined to those occasions where the law has established no specific remedy, and where in justice and good government there ought to be one. 6 *Bac. Abr., Tit. Mand.,* 418. But there can be no want of remedy for any illegal or improper interference with the exercise of the powers and duties legally pertaining to the office of the appellees.

In the case of *Reg. vs. Peach,* 2 *Salk.,* 572, a dissenting minister, being qualified to preach under the toleration Act, and being illegally convicted for the exercise of his right, and supposing that he would be further prevented from exercising his right to preach, except at his peril of abiding a conviction therefor, applied for a mandamus to be permitted to preach. But the writ was denied, and the Court held, "that a mandamus is always to do some act in execution of law;" whereas the writ, if issued in that case, would be in the nature of a writ *de non molestando.* And in accordance with this case, Ch. Baron COMYNS, in his *Dig., Tit. Mand.* (*B,*) lays it down as settled, that a mandamus does not lie to prevent a molestation against law. The same principle is stated by Tapping in his work, as the settled law. *Tapp. on Mand.,* 189, 190.

Taking this to be an established principle upon the subject, there is no proper case stated in the petition of the appellees to justify the issuing the writ. The application was founded entirely upon an apprehension that the appellees might be disturbed or molested in the exercise of some of the functions and powers that have heretofore belonged, and may still pertain, to their office. To grant the writ in such case, would be simply making it a substitute for an injunction.

We think the petition ought to be dismissed, and we shall therefore reverse the order appealed from, and dismiss the petition with costs to the appellants.

*Order reversed, and*
*petition dismissed,*
*with costs.*