[No. 8092.]

## HARRISON v. THE PEOPLE.

1. CONSTITUTIONAL LAW—*Amendment of the Constitution—Judicial Notice.* The facts upon which depend the question whether an amendment proposed to the constitution has received the approval of the people will be judicially noticed.   (143)

2. EVIDENCE—*Judicial Notice,* is taken of the facts upon which depends the question as to the adoption by the people of a proposed amendment to the constitution. And the court will resort to all sources of information which may afford satisfactory evidence upon the question.   (143, 144)

The published volumes of the general statutes of 1883, and Mills Statutes, accepted as prima facie evidence of the constitution, as therein appearing, nothwithstanding the manifest defects in the certificate of the secretary of state, prefixed to the first, and in spite of the note to § 29 of art. VI found in the second.

The court having received information from the county clerks of many of the counties, that, as shown by the records and memorials contained in their respective offices, the amendment proposed by c. XVII of Gen. Laws 1877, to § 29 of art. VI, was in fact submitted to the people at the succeeding general election, and being convinced beyond doubt from these sources of information, and the recognition of the amendment in the early decisions of this court, when the matter must have been of common knowledge (5 Colo. 455, 457; id 487, 490; 6 Colo. 92, 93; 11 Colo. 373, 376) that in fact the amendment so proposed received the popular sanction, declared it to be part of the fundamental law, though no evidence whatever of its submission or adoption was found in the office of the secretary of state.   (142, 143)

3. ———*Stipulation of the Parties as to the Law,* that a supposed enactment is invalid, or their agreement as to facts which render it so, will not be accepted.   (144)

4. ———*Official Certificate.* The certificate of the secretary of state to the published volume of the Revised Statutes is not affected by the statement contained in the note at the foot of § 29 of art. VI of the constitution. The extent of his official duty was to place the constitution in the volume, and it was not within his function to cast doubt upon his own work.   (143)

5. STATUTE—*Evidence of Enactment—Burden of Proof.* The court has invariably noticed the documents evidencing action of the general assembly, subscribed by the proper officials, and found in the office of the secretary of state. They are accepted as *prima facie* evidence of

the law, and whoever asserts the contrary has the burden of proof. (145)

*Error to Lake District Court.*—Hon. Chas. Caven-der, Judge.

Mr. John A. Ewing and Mr. Frazier Arnold, for plaintiff in error.

Mr. Jos. W. Clarke, for defendant in error, Allan.

Mr. Justice White delivered the opinion of the court:

The question involved in this suit is, whether William H. Harrison or John P. Allan is entitled to the office of Judge of the county court of Lake County. The suit was instituted in the district court upon the relation of the district attorney against Harrison and Allan, each of whom claimed to be entitled to the office. The judgment was in favor of Allan and Harrison brings the cause here for review.

At the general election in November, 1908, Harrison was elected to the office for the four year term commencing January 12, 1909, and thereafter, in due time, qualified and entered upon the discharge of the duties thereof, and so continued until the judgment of ouster here under review. At the general election in November, 1912, one Duncan J. McLean was elected to the office for the four year term, commencing January 14, 1913. He, however, died on January 2d without having filed a bond or taken the oath of office. When the term for which he was elected arrived the board of county commissioners, by resolution, declared a vacancy to exist and appointed John P. Allan to fill the same, who thereupon qualified and demanded the office.

It is claimed by Harrison that (original) section 29 of article VI of the constitution as adopted in 1876 is now in force, and by virtue thereof the vacancy in the un-

expired term, occasioned by reason of McLean's failure to qualify, could be filled only by an election; and, being the incumbent of the office, he was entitled to hold over under the provisions of § 1, Art. XII of the constitution. Allan contends that § 29 of art. VI of the constitution. as adopted in 1876, was amended at the general election in 1878, as proposed by chap. 17 of the General Laws of 1877, p. 132, and is, as that section now appears, in the body of the constitution, in General Laws, 1883, Mills Ann. Stat. 1891, Rev. Stat. 1908, and Mills Ann Stat. 1912.

It is conceded that if the proposed amendment is, in fact, a part of the constitution, the judgment in favor of Allan is right; otherwise, it is wrong. The amendment was proposed under the provisions of § 2 of art. XIX of the constitution as adopted in 1876. The section required the secretary of state to publish the amendment in full in at least one newspaper in each county, (if such there be), for three months previous to the next general election for members to the general assembly. It also declared that "at said election the said amendment or amendments shall be submitted to the qualified electors of the state for their approval or rejection, and such as are approved by a majority of those voting thereon, shall become part of this constitution." The constitution was silent as to the procedure in submitting proposed amendments to a vote of the qualified electors, and ascertaining the result of such vote. The act proposing the amendment, however, made provision therefor. Section 2 required the elector to deposit in the ballot box a ticket whereon should be written or printed "For the amendment" or the words "Against the amendment." And § 3 declared that the votes cast for the adoption or rejection of the amendment should "be canvassed and the result determined in the manner provided by the laws of the state, for the canvass of votes for representatives in congress." At that time the mode of procedure in that regard was prescribed by chap. 30

of the General Laws of 1877. From a consideration of
these provisions it is disclosed that an abstract of the
votes cast, and the result thereof, in each county was re-
quired to be made, filed and recorded in a book kept
for that purpose in the office of such county clerk, and
a certified copy delivered or transmitted to the office
of the secretary of state of the state board of canvassers,
—§§ 53, 54, 56, chap. 30, Gen. Laws 1877; that from such
certified copies of the abstracts of votes cast in the dif-
ferent counties the state board of canvassers were re-
quired to ascertain and determine the result of the elec-
tion, and make statement thereof, and of the whole num-
ber of votes cast at such election, on the proposition in
question, and to certify and deliver the same to the sec-
retary of state, who was required to record it in a book
kept for that purpose, and to cause a copy of the certified
statement to be published in a newspaper published at
the seat of government. §§ 60 and 62, chap. 30, Gen.
Laws 1877.

Harrison relied upon original section 29 of art. VI
of the constitution, and a legislative resolution—S. L.
1887, p. 476—wherein the secretary of state was directed
to publish with the laws enacted that session all amend-
ments to the constitution adopted since the original con-
stitution; and though certain constitutional amendments
are therewith published, the amendment in question is
not, and no reference is made thereto. S. L. 1887, pp.
481, 484. He also introduced in evidence a certificate of
the secretary of state, dated the 6th day of February,
1913, showing that the act of the general assembly pro-
posing the constitutional amendment in question was on
file in the records of his office; and that, after a careful
research of the records of that department, he failed to
find therein any record of the submission of the amend-
ment to a vote of the people; or any record that the sev-
eral county clerks certified abstracts of the votes cast
thereon in their respective counties; or that the same was
canvassed or a certificate of determination thereon is-
sued by the state board of canvassers. By declaration of

S. L. 1911, p. 231, this certificate established, *prima facie,* the non-existence of any facts certified to as not existing in the records of such department which were, by law, required to be kept or recorded in that department.

By an act of the general assembly, approved Feb. 28, 1883, pp. 5-7, G. L. 1883, provision was made for the printing, *inter alia,* of the constitution, together with all the general laws of the state, and the secretary of state required to certify "to the correctness of said laws and other matters so printed;" and the act declared that the laws and other matters so printed and certified shall be *prima facie* evidence of the original in all courts and tribunals of this state. In the constitution so printed, § 29, art. VI appears as amended, followed by a reference to the legislative act proposing the amendment. However, the certificate of the secretary of state to the volume published, Gen. Stat. 1883, though reciting the title of the act authorizing the compilation, and certification thereto, and making the laws and matters so certified *prima facie* evidence of the original, does not include the constitution, but extends only to the general laws of the state and the code of civil procedure. An act of the general assembly, S. L. 1907, p. 93, provided for the compilation, publication, and distribution, *inter alia,* of the constitution, and all the general statutes of the State of Colorado, including the code of civil procedure, in one volume. The act also required the secretary of state to copyright the publication, and prepare a certificate to the effect "that the volume contains all the general laws of the State, the Constitution of the State of Colorado, and the Code of Civil Procedure, that he has carefully compared the same with the original manuscripts, and that the compilation and revision is complete, true and correct," and declared that the laws and other matters so printed and certified should be *prima facie* evidence of the originals, in all courts and tribunals of this state. In the body of the constitution therein printed the section, as amended, appears, followed, however, by a note in small type, that while there is no record of a vote on this

amendment, it is supposed to have been adopted October 1, 1878, together with a recitation of the original section.

It is conceded that the certificate of the secretary of state to this volume, taken alone, covers the section as amended and makes it, *prima facie,* a part of the constitution, but it is insisted that the certificate must be read and considered in connection with the explanation contained in the note, and, when so considered, its effect in that regard, is destroyed thereby; and that this coupled with the failure of a previous secretary of state to embody the alleged constitutional amendment in the Session Laws of 1887, when obeying the legislative mandate to embody therein all amendments to the constitution adopted since the original constitution, removes any presumption as to its validity that might otherwise maintain. In the body of the constitution, as printed in Mills Ann. Stat. 1891, and Mills Ann. Stat. 1912, appears the section as amended, followed by the same note appearing, as hereinbefore stated, after the section in the Rev. Stat. 1908. By legislative enactments, these editions, by name, were made *prima facie* evidence of the originals, in all courts and proceedings in this state. S. L. 1891, p. 367, as to the former edition, and S. L. 1913, p. 406, as to the latter edition. The claim is made, however, that the effect of these legislative enactments, making the contents of such books *prima facie* evidence, extends no further than the statutory law of the state, notwithstanding there is embodied therein that which purports to be the Constitution, including the amendment in question.

We do not concur in these views. The volumes of Mills Annotated Statutes are designated by name and those volumes, whatever they contain, are declared to be *prima facie* evidence of the originals. Moreover, while the certificate of the secretary of state, to the General Statutes of 1883, is unquestionably defective, the publication of the volumes was, nevertheless, authorized by legislative authority, and the Constitution of the state directed to be published therein; so the instrument found therein

as the Constitution, may be accepted, *prima facie,* by the courts as such instrument, notwithstanding the defective certificate. Nor do we think that the note following the section of the Constitution here in question, as the same appears in the body of that instrument as found in R. S. 1908, in any wise affects the *prima facie* character to be ascribed to that amendment by virtue of the certificate of the secretary of state. As a public official he was commanded, *inter alia,* to place the Constitution in that volume and to certify thereto. This was the extent of his official duty in the premises. It devolved upon him to do this act, and the effect thereof is not destroyed because he set forth in a note certain matters that might cast some doubt upon the correctness of his conclusions. However, should we be mistaken in these views, it would not require a reversal of this judgment. The facts here involved are facts of "law", and may be noticed judicially, to the end that we be satisfied what the law is that we are called upon to apply. As said in *Nesbit v. The People,* 19 Colo. 441, 450, 36 Pac. 221, 224:

"Every court must determine for itself what the law is upon a given subject, whenever it becomes necessary to apply the same in the discharge of its judicial functions. It is a matter of every day experience that the court must decide what the common law is, and what the construction of statutes shall be; so, also, the court must decide as to the existence or validity of a statute, whenever the same is in dispute; and, as a general rule, the same principle applies to a dispute respecting the existence or non-existence of constitutional provisions. Such dispute may become a question of fact, yet the court must determine it, and, in doing so, may resort to other evidences than the session laws of the state published by authority. It may seem paradoxical, but it is nevertheless true, that a question of fact respecting the existence or non-existence of a law is a question of law; it is a question to be determined by the court whenever it arises in the course of litigation, and not a question to referred to some other tribunal for de

cision. *Town of Ottawa v. Perkins,* 94 U. S. 260. [24 L. Ed. 154.]

Indeed, we will not accept the admission of parties that a supposed law is invalid, or their agreement as to the existence or non-existence of facts rendering it so.— *Peckham v. People,* 32 Colo. 140, 75 Pac. 422; *Anderson v. Grand Val. Irr. Dist. Co.,* 35 Colo. 525, 85 Pac. 313.

Whenever it becomes necessary to apply the law in the discharge of our judicial functions, *we must know what it is,* and to that end may resort to that which is proper and essential to satisfy our minds in that regard. As said in Wigmore on Evidence, § 2572: "A court may be expected to dispense with evidence of the law of its own sovereignty; for it must be credited with a knowledge of it, or at least with the most competent knowledge where to search for it. No evidence of it need therefore be offered; and the counsel's reference during a trial to the text, or a copy, of the statute, for informing the judge, must be regarded as a judicial license to counsel to employ that evidence which the judge (*ante,* § 2569) would in theory seek for himself."

Mr. Justice Miller tersely states the rule in *Gardner v. The Collector,* 6 Wall. 499, 511, as follows: "We are of opinion, therefore, on principle as well as authority, that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it, have a right to resort to any source of information which in its nature is capable, of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule."

That we may forego our own investigation and accept a certificate of some officer as sufficient proof of facts to be judicially determined, is well established. As said in Wigmore on Evidence, § 1353: "That a court may do this, when it believes the result to be a more likely approach to truth than its own investigations could obtain, cannot be doubted. But in such a case the court

acts voluntarily, and exercises its choice. Being charged constitutionally with the exclusive function of determining facts in controversy, it believes this duty to be best carried out by accepting a certain person's statement as the most satisfactory source of reliance in reaching that determination.'' And further in the same section: ''It is one thing for the judiciary, while exercising in its own way its constitutional powers, to choose to accept the aid of an official certificate in reaching its determination; but it is quite a different thing for the judiciary to be forbidden altogether to exercise its powers in a certain class of cases. The judicial function under the Constitution is to apply the law; to apply the law necessarily involves the determination of the facts; and to determine the facts necessarily involves the investigation of evidence as a basis for that determination. To forbid investigation is to forbid the exercise of an indestructible judicial function.''

This rule has long been recognized in the courts of this jurisdiction by declining to examine, *sua sponte,* the journals of the general assembly on the mere assertion of counsel that an enrolled bill, which has been duly certified and signed by the proper officers and deposited with the secretary of state, is invalid because of non-compliance with some requirements in its passage, but requiring the party seeking to question its validity to present the facts upon which he relies to the trial court, and if he desires to have the decision of that court reviewed, to make such proof a part of the record by bill of exceptions. In other words, we have invariably taken judicial notice of all the acts of the general assembly, signed by the proper officials, and found in the office of the secretary of state, because they are, *prima facie,* the law, and we are content with that proof. Whosoever contends otherwise has the burden of informing us, and, in doing so, must follow the prescribed rules by which parties bring matters before judicial tribunals for determination. And as this court is the final arbiter as to what the law is, the rule is likewise binding upon inferior tribunals. We are satisfied

that this is the true principle involved, and that no decision of this court, when properly understood, is in conflict therewith. ' Judicial notice does not depend upon the actual knowledge of the judges. ''Courts notice without proof all, whether fact or law, that is necessarily or justly to be imputed to them, by way of general outfit for the proper discharge of the judicial function.'' Thayer's Prel. Evi., p. 301. When facts of law are involved, they may investigate and may refresh their judicial recollections by resorting to any means which they may deem safe and proper.—*Brown v. Piper,* 91 U. S. 37, 42, 23 L. Ed. 200; *Gardner v. The Collector, supra.*

The validity of the amendment depends upon whether it received a majority of all the votes cast thereon at the election. The Constitution itself so declares. Therefore, its validity can not depend on the subsequent omission of the state board of canvassers to determine the result or of the failure of the secretary of state to record a certificate thereof. The votes actually cast are the effective facts, and the certificate, as to the result of that vote, is evidence only of such facts. Moreover, as the certificate of determination made by the state board of canvassers and required to be recorded in the office of the secretary of state, was to be compiled from the certificates of the several county boards of canvassers of the votes cast, it would seem that the records as found in the office of the several county clerks, would as likely show the truth in that regard as would the certificate of the state board of canvassers, had one been made. The court would unquestionably, in the first instance, look to the certificate of the state board of canvassers to ascertain the result of the vote, but since there appears to be no record as to what that board did in the premises, if anything, we have resorted to the election records, returns and canvass in the offices of the several county clerks of the state, which seems to us the next best means of advising ourselves of the true facts of law here involved. As said in *State v. Stearns,* 72 Minn. 200, 219, 220, 75 N. W. 210, 215:

"The validity of this law depends upon whether it receives a majority of all the votes cast at the election, not on the subsequent act or omission of the state canvassing board, or of any other officers. For the purpose of determining this fact, the court will take judicial notice of the election records, returns and canvass thereof by the state board in the office of the secretary of state, and, if necessary, of the election returns and canvass in the offices of the several county auditors of the state."

While we have not received certified copies of the vote cast from the office of every county clerk of the counties existing at the time the amendment in question was submitted to a vote of the people, we have from many, and are convinced, beyond a question of doubt, that the amendment was submitted to a vote of the electors and received, for its adoption, practically a unanimous vote of those voting thereon. We are also convinced of this fact by reason of early decisions of this court at a time when the matter must have been of common knowledge, and yet, without question, the amendment was accepted as valid. In *People v. Boughton,* 5 Colo. 487, 490, decided at the December Term, 1880, involving the right to the office of judge of the county court of Larimer county under facts almost identical with those here involved, the fact of the adoption of this constitutional amendment is stated and it is held that by virtue thereof the constitution and the statute authorize the county commissioners to fill a vacancy in the office of County Judge without regard to the duration of the unexpired term. At the same term of this court, and in the same volume, pp. 455, 457, in *People v. Rucker,* the fact of the amendment is again stated, and a portion of the section, as amended, is quoted. Again, in *People v. Wright,* 6 Colo. 92, 93, decided at the December Term, 1881, this court, after stating that the right to an office, as between the parties to that suit, depended upon the construction to be given to § 29 of Art. VI of the Constitution, quotes the section as amended and says: "This section is an amend-

ment framed and submitted by the legislature, and adopted by the people, in lieu of section 29, article VI, of the constitution as originally adopted." And in *Re. Election of District Judges*, 11 Colo. 373, 376, 18 Pac. 282, 283, it is said: "It is clear, under the provisions of section 29 as originally adopted, that, in cases of a vacancy and an election to fill it, the election would be for the unexpired term. Such is the express language of the section. The first legislature, however, submitted for adoption an amendment to section 29 of this article, which was adopted in 1878", etc.

The effect of the judgment of the lower court was to sustain the amendment, and it is, therefore, affirmed.

*Judgment affirmed.*

Decision *en banc*.

CHIEF JUSTICE MUSSER concurring in the result, Mr. JUSTICE SCOTT not participating.