Campbell, Chief Justice,
delivered the opinion of the court:
A petition was filed March 28, 1927, by the Okanogan and other tribes or bands of Indians alleging that the suit is brought under authority of an act of Congress described as Senate bill No. 3185, 69th Congress, 1st session, entitled “ An act authorizing certain Indian tribes and bands, or any of *27 them, residing in the State oí Washington, to present their claims to the Court of Claims.” A copy of this alleged act appears in the petition. It is further alleged that this bill having been duly passed by both Houses of Congress, on June 23, 1926, was signed by the presiding officers thereof and “ duly attested as by law required ” and thereafter, on June 24, 1926, was duly presented to the President of the United States, and that “ the said bill not being returned by the President within 10 days after it was so presented to him, or at all, the same became and now is a law in like manner a.s if he had signed it.” The demurrer presents the one question whether in the circumstances stated the .bill ever became a law.
Article I, section 7, clause 2, of the Constitution of the United States is as follows:
“ Every bill which shall have passed the House of Pepre-sentatives and the Senate, shall, before it become a law, be presented to the President of the United States. If he approve he shall sign it, but if not he shall return it, with his objections to that House in which it shall have originated, who shall enter the objections at large on their journal, and proceed to reconsider it. * * * If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress, by their adjournment prevent its return, in which case it shall not be a law.”
The bill was presented to the President on June 24, 1926. On July 3, 1926 (eight days thereafter, Sunday excepted), there was a final adjournment of the first session of the 69th Congress. The President did not approve or sign the bill. He did not make any return of it to either House. He did not deposit it with the Secretary of State as a law. When the 69th Congress reconvened in its second session on December 6, 1926, no return of the bill or of objections thereto had been or was made. These facts, it is urged for the plaintiffs, caused the bill to become a law. The Government contends to the contrary. The exact question it is conceded has not been decided by the Federal courts, but with great industry counsel for the parties have produced historical prece *28 dents and decisions by State courts supposed to bear upon or decide similar questions. Under the provision quoted a bill which shall have passed the two Houses of Congress shall, before it become a law, be presented to the President. “ The only duty required of the President, by the Constitution in regard to a bill which he approves, is that he shall sign it. Nothing more. * * * Even in the event of his approving the bill, it is not required that he shall write on the bill the word approved, nor that he shall date it.” Gardner v. Collector, 6 Wall. 499, 506. If the bill shall not be returned by him within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it. “ Here are two courses of action by the President in reference to a bill presented to him, each of which results in the bill becoming a law. One of them is by signing the bill within ten days and the other is by keeping it ten days and refusing to sign it. * * * Yet, in the latter case, no evidence is required of the President, either by the Constitution or in actual practice, to show that he had ever received or considered the bill.” Gardner v. Collector, supra. But if the President does not approve the bill, he shall return it with his objections, and he has ten days (Sundays excepted) within which this duty may be discharged. It seems to us that these provisions are not intended to make the President a part of the law making power, because Article I, section 1, of the Constitution provides that “ all legislative powers herein granted shall be vested in a Congress of the United States ” which shall consist of a Senate and House of Representatives. See Burton v. United States, 202 U. S. 344, 367. They do not confer the power of peremptory veto though the term veto is now generally applied to a return of a bill by the President “ with his objection.” Story gives reasons why the President “ should possess a qualified negative.” Sec. 884, et seq. And Chancellor Kent says: “A qualified negative answers all the salutary purposes of an absolute one, for it is not to be presumed that two-thirds of both Houses of Congress on reconsideration * * * will ever concur in any unconstitutional measure.” 1 Kent’s Com. 255. In Weil's case, *29 29 C. Cls. 523, Judge Nott enters upon a lengthly discussion of the lawmaking power, which we refer to without committing ourselves to the conclusions reached in the particular case. Pointing out differences between the English and American systems, he says (p. 539) : “ Under the American Constitution the assent of the President is not essential to the enactment of a single law. His authority over an act of Congress is simply revisory and advisory. * * * If he does not approve, he does not forbid; he does not, in the sense of the Eoman law, veto. On the contrary, he returns the bill to Congress with his reasons why it should not become a law — reasons which are not fiats, but which are addressed to the legislative intelligence.” And he might have added as further showing that the President’s assent is not necessary, that if the requisite two-thirds of each House approve the bill it becomes a law without being presented again to the President. The plaintiffs’ contention would seem to imply that the provision “ If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him the same shall be a law in like manner as if he had signed it ” is all that is said, but the contention disregards the following phrase, “unless the Congress by their adjournment prevent its return, in which case it shall not be a law.” The ten days are provided for the President’s deliberation and the proper formulation of his objections. They are not needed where he approves the bill or where by his inaction he is willing the hill shall become a law. In the latter case it is declared the bill shall be a law and in another category provided for it is just as emphatically declared that the bill shall not be a law, that being where “ Congress by their adjournment prevent its return.” The contention here is that the bill became a law because the adjournment of the Congiess, which took place within the period of ten days (Sundays excepted) was only an adjournment of the 1st session of the 69th Congress, and the President did not return the bill to the Congress in its next session or in the meantime to officers or employees of the House or Senate who may have been in their places and have kept it until *30 the Congress was again in session. Unless we ignore the provision for a return of the bill within ten days (Sundays excepted), in case the President objects to it, it is manifest that he should have lodged it with these officers or employees within that period, if the contention have any merit. We look in vain for any requirement that' the President return the bill after the ten days (Sundays excepted) shall have expired. It is also manifest that unless the concluding-phrase, “in which case it shall not be a law,” be ignored, there is no merit in the contention. Transmitting the bill to either employees or to the next session will not vitalize a bill that upon the adjournment the Constitution declares shall not be a law. The attempted distinction between adjournment of one or the other session is unsound. The fact in the instant case is that the first session of the 69th Congress adjourned several days before the expiration of the ten-day period provided for, and that was an adjournment of the Congress. The Constitution does not limit the time of adjournment to the final adjournment at the second session, and the courts have no right to so limit it. In La Abra Silver Mining Company v. United States, 175 U. S. 423, it was held that a bill signed by the President during a recess of the Congress and within the period of ten days (Sundays excepted) after it was presented to him became a law, but the court pretermitted the question whether he can sign a bill after the final adjournment of Congress for the session. In the course of the opinion it is said (p. 454) : “ But the Constitution places the approval and disapproval of bills, as to their becoming laws, upon a different basis. If the President does not approve a bill, he is required within a named time to send it back for consideration. But if by its action, after the presentation of a bill to the President, during the time given him by the Constitution for an examination of its provisions and for approving it by his signature, Congress puts it out of his power to return it, not approved, within that time to the House in which it originated, then the bill fails and does not become a law.”
What we have said accords with the early view taken of the effect of an adjournment. In November, 1812, Presi *31 dent Madison sent a message to Congress informing them that “ the bill f ailed to become a law ” because it had been presented to him “ at an hour too near the close of the session to be returned for reconsideration.” President Jackson took a like course in 1832 with a bill passed at the first session and presented to him and the Congress had adjourned within the ten-day period. President Tyler informed the Congress in 1842 that two bills had failed to become laws because presented within the period of ten days (Sundays excepted), but in the meantime the Congress had adjourned. As already said, we do not find a provision requiring the President to call attention to the fact that the bill has failed to become a law, though in the instances mentioned and perhaps ,in others such a course was pursued.
We conclude that the bill in question never became a law, and therefore that the demurrer should be sustained and the petition dismissed. And it is so ordered.
Moss, Judge; Graham, Judge; and Booth, Judge, concur.
GreeN, Judge, took no part in the decision of this case.