## BALTIMORE CITY COURT.

Filed June 17, 1921.

ROBERT L. GRAHAM, ET AL.,

VS.

CHARLES D. GAITHER, ETC.

*Isaac Lobe Straus* for petitioners.

*Alexander Armstrong*, Attorney General, and *Allan H. Fisher*, Assistant Attorney General, for respondent.

DAWKINS, J.—

This case was most fully and ably argued, but many of the matters discussed at the hearing have been settled in Maryland. Many of them are not involved in this case. There is no longer any doubt but that taxpayers or private persons can enforce a public duty, due to the government as such, nor is there any doubt but that since the case of Levering vs. Park Commissioners, 134 Md. 48, Section 436, Article 27, of the Public General Laws of Maryland, which provides that "no

person whatsoever shall work or do any bodily labor on the Lord's Day, commonly called Sunday, and no person having children or servants shall command or willingly suffer any of them to do any manner of work or labor on the Lord's Day (works of necessity and charity always excepted), or shall suffer or permit any children or servants to profane the Lord's Day by gaming, fishing, hunting or unlawful pastimes or recreation," etc., is the law in force in Maryland.

It is settled, too, that playing *professional* baseball on Sunday for pay is a violation of the law. It is equally true that under the laws of this State, viz., Chapter 559 of the Acts of the General Assembly of Maryland of 1920, the duties of the Police Commissioner of Baltimore, among other things, are "to preserve the public peace, prevent crime and arrest offenders, prevent and remove nuisances * * * and see that all laws relating to the observance of Sunday * * * are enforced and also to enforce all laws or ordinances of the Mayor and City Council of Baltimore * * * or any law of the State which may be properly enforceable by a police force," etc.

This means the laws that are in force. It does not mean that either courts or police officials have the power to make the laws. Each have their respective duties to perform. Whether the existing laws are objectionable or not it is not for the above-named officials to fail to enforce them so far as it is possible for them to be enforced.

The legislative body alone has the power to change or repeal the law. These questions are not before the court, nor is the question of the propriety or impropriety of Sunday baseball, nor the question suggested at the hearing of giving consideration to the clamor of the mob and ignoring the decision of the Court of Appeals in the above-cited case, nor of considering the views of those who favor Sunday ballplaying or of those who are opposed to it—but the sole question before the court is whether or not this court can compel by mandamus a ministerial officer, upon whom rests the responsibilities already mentioned, to perform his duties in just such a fashion as the petitioners think he should perform it it or in just such a manner as the

court might believe he should perform his duty.

An affirmative answer to this question would say, in effect, that the court has the power to say to the arresting officer that he must proceed in a way that the court directs in apprehending any criminal for any offense regardless of the method that experience or training may have taught the police official was the proper one to pursue. Admitting this as a proper procedure, the commissioner had as well be dispensed with and the court substituted for that officer. If the writ is proper to be issued in such cases the court must be prepared to exercise a constant or recurring supervision of the daily acts of the Police Commissioner and a control over a discretion which he must exercise. This would seem dangerous and improper.

But even if the court has full power to direct by mandamus the Police Commissioner how to prevent and restrain the holding, playing or conducting the games of professional baseball on the Sabbath by arresting the participants in such games, then the court, before determining that the Commissioner is not doing his duty and prior to granting such a drastic process upon any statement (even though that statement might in the court's opinion show a way to prevent the crime charged), should consider the very full answer of the Commissioner in this case, in which he sets forth in detail what he has been doing to enforce the law. He says he has set in motion every part of the machinery of the law that he has in power of control. He has used his best judgment in sending names or participants in the games and of witnesses to the Grand Jury and has taken such other action to enforce the law as it is in his power to take.

In the case of Cull, 114 Maryland, the Court of Appeals, in effect, says that a Police Commissioner must have some latitude or discretion given to him in the performance of his duties so as to preserve his independence of action. So far as the time at the court's disposal has permitted, the cases referred to at the hearing have been examined. In not one of them has any authority been found for a mandamus for the arrest of any one by a sheriff or any law-enforcing of-

110

ficer in any special way that any citizen may direct. Patrol wagons are comparatively a new means of transporting persons accused of crime to the place of detention or trial. Tagging automobiles is used as a notice of arrest and warning to violators of the law to appear and answer a violation of the automobile and traffic laws, but the using of such means surely is not something with which the court can interfere by mandamus, should some other method be substituted. It is not for the court to say how he shall do his duty. It may be that an actual arrest on the field may tend to force a compliance with the law, but the court can not say that that is the only way to enforce the law. The Grand Jury has failed to indict in some instances, and in other cases in which an indictment has been found the Petit Jury has failed to convict. What can the Commissioner do to make the juries do their duty? His powers go no further than making arrests for criminal acts and bringing the offenders to the tribunals that are charged with the duty of determining on the law and the facts, the dispositions of the persons charged with violations of the law. If the law is so flagrantly violated, the fault seems to be with others and not with the Commissioner that violators go unwhipped of justice.

The due observance of the Sabbath is the moral conservation of the nation, but as desirable as it is to have this day properly observed the courts should not go beyond the powers conferred upon them by the Constitution and the laws of the land to carry out any theory of law enforcement that they may have. The Commissioner says he has performed his duty. The demurrer admits what he says to be true. The memorandum furnished by the Attorney General makes it very plain upon what facts he relies to establish this. He should have those facts considered. If an answer to an application for a mandamus set up any reason for refusing the writ, though it be in some respects irresponsive, it should not be dismissed. 42 Maryland 203, Legg vs. Annapolis.

Of the many cases dealing with similar questions and confirming the views herebefore expressed, the following may be cited as typical:

157 Michigan 442, Gowan vs. Smith, a proceeding to compel the Police Commissioner to enforce a statute regulating liquor saloons and to set aside an order issued permitting saloons to keep open certain hours on Sunday in violation of the statute. The court said:

"Mandamus will not issue to compel the Police Commissioner * * * who has in disregard of the statute prohibiting the opening of saloons on Sunday promulgated a rule permitting saloons to be open at additional and specified hours, to summarily close up offending places.

"The writ of mandamus will not issue to compel the performance of discretionary acts, of an executive nature * * *.

"The only action which the plaintiff can demand from the Police Commissioner is that he proceed to collect evidence against the offending saloon keeper and if such evidence is found by him to be sufficiently conclusive to warrant the making of a complaint, then to make such complaint and to proceed in the ordinary orderly prosecution thereof * * * the writ should be denied.

"This court is not constituted to properly take cognizance of such infractions of the law by the use of the extraordinary writ of mandamus.

"* * * The Commissioner is bound to use the discretion with which he is clothed. He is not charged alone with the execution of the liquor laws of the State within the City of Detroit, but he is likewise charged with the suppression of all crime and the conservation of the peace. To enable him to perform the duties imposed upon him by law, he is supplied with certain limited means. It is entirely obvious that he must exercise a sound discretion as to how these means shall be applied for the good of the community."

In People vs. Bussee, 238 Ill. 593, the prayer of the petition was to have the Mayor use his authority to enforce the statute to close the saloons on Sunday. The court says: "Counsel for the appellant confuses functions of the executive and judicial departments of

government. If their intention was to prevail, the mandate of the court would be substituted for the statute. * * * The proposition is to have him commanded to enforce the statute * * * which he might do in one or all of several ways."

In 95 Mo., at 44, etc., The State, Ex Rel. Wear, vs. Francis, a case to compel the Police Commissioner to arrest and prosecute certain persons for violating the law prohibiting the sale of liquors on Sunday. The statute as to the duties of the Police Commissioners in St. Louis is almost identical with that of Maryland. The court says:

"A writ of mandamus will not issue to compel the Board of Police Commissioners of the City of St. Louis to arrest and prosecute certain named persons for having violated the State law against the selling of fermented liquors on Sunday.

"This is further * * * than the mandatory authority of a court extends. It is the duty of a sheriff as a conservator of the peace * * * to apprehend and commit to jail all felons and traitors and execute all process directed to him by legal authority. * * * Yet it is believed that no instance can be found where a mandamus has issued commanding a sheriff to quell a riot or to arrest a criminal. The fact that no such precedent can be found argues very strongly against the exercise of such authority.

"It is very easy to see that if the process of mandamus could be employed in this ordinary way that the extraordinary writ would soon descend from its high plane and become very commonplace."

It is proper to say that the motion ne recipiatur having been filed only on the morning of the hearing should be overruled, but the question herein has been determined without consideration being given to the matters set up in the supplemental answer.

Believing that the court, for the reasons given, has no power to direct the writ to issue as prayed, the demurrer to the respondent's answer will be overruled.